# THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>JOHN THOMAS DONNAFIELD,<br><br>　　　　　Defendant. | CRIMINAL CASE NO. 25-00010<br><br>**DECISION AND ORDER ON<br>DEFENDANT'S MOTION TO SUPPRESS** |

## I.　INTRODUCTION

Defendant John Thomas Donnafield moves the court for an order to "exclude all evidence obtained as a result of the invalid search warrant and illegal execution of the search warrant." ECF No. 32, at 7. Specifically, the evidence includes a "broken piece of clear glass pipe wrapped with white plastic containing white frosted residue suspected methamphetamine"; a "clear improvised glass pipe with bulbous end with burnt and white frosted residue suspected to be methamphetamine"; a "clear improvised glass pipe with curved and bulbous end containing burnt residue suspected to be methamphetamine"; a "clear plastic straw heat sealed at one end containing crystallized substance suspected to be methamphetamine"; a "clear glass bowl containing crystallized substance suspected to be methamphetamine"; nine pills of Ibuprofen;

1  plastic bags with 3.65, 9.59, 6.33, 13.10, 2.76, 3.41, and 5.31 grams of suspected
2  methamphetamine; "one (1) Beretta 9mm Caliber pistol, Model 92FS bearing serial number
3  BER750349"; plastic bags with "one (1) silver empty magazine and five (5) rounds of 9mm
4  caliber ammunition"; "eight (8) .22 caliber rounds of ammunition"; "five (5) .38 caliber rounds
5  of ammunition"; "thirteen (13) 9mm caliber rounds of ammunition inside a carton box"; and
6  "eighteen (18) 9mm caliber rounds of ammunition (inside the Blazer ammunition box)"; plastic
7  bags with $991, $305, $253, $237; a "white Apple brand iPhone"; two "black Samsung brand
8  cellular phone[s]"; a "black and silver Samsung brand cellular folding phone"; a "black Kizing
9  digital scale"; a "black Smoket DVR"; a "black Sharper Image Digital Scale"; a "black AWS
10 Digital Scale"; a "silver digital scale"; a "blue Weighmax digital scale"; a "black Digi Weigh
11 digital scale"; a "black Hamilton Beach digital scale"; a "black digital scale (round scale)"; a
12 "black Yoncon digital scal"; more clear Ziploc bags; and a "DVD-R disc containing 178 photos
13 of residence and items seized." ECF No. 47.

14 The Defendant argues that the search warrant does not comply with the Fourth
15 Amendment because it contains the wrong address of his home violating the amendment's
16 particularity requirement. *See* ECF No. 32, at 4-6. He further argues that the execution of the
17 search warrant violated 8 Guam Code Annotated Section 35.20(c) requiring that the warrant be
18 executed between the hours of 6 a.m. to 10 p.m. *See* ECF No. 32, at 6-7.

19 The Motion to Suppress came before this court for an evidentiary hearing on October 10,
20 2025. After hearing testimony of witnesses and arguments from counsel, the court took the
21 motion under advisement. For the reasons stated herein, the Motion to Suppress is **DENIED**.

22 **II.**     <u>**SUPPRESSION HEARING TESTIMONY**</u>

23 The government called two witnesses at the evidentiary hearing: (1) Guam Police
24 Department Detective Eugenius K. Pewtress and (2) United States Secret Service Task Force

Officer Craig Calvo. Defendant testified on his own behalf.

    A.    **<u>Detective Pewtress testified about his extensive familiarity with the Defendant's residential address</u>**

Detective Pewtress averred in the search warrant affidavit dated November 30, 2023, that the place to be searched was "#10 Chalan Piao Tituka Street, Ordot-Chalan Pago, Guam 96910, its curtilage, vehicles," and Defendant. Gov. Ex. 7-2. He stated in the affidavit that "[f]rom 2022 to present, I have observed through periodic patrol checks that there was a relatively high volume of vehicle traffic at the target residence, which was located within a dead-end court. I have knowledge through previous calls for police service that the residence is occupied by [Defendant] and his mother, Keiko Donnafield. Their primary vehicle is a 2018 silver Nissan Rouge wagon (GLP: OR4846), registered to Keiko." *Id.* During the suppression hearing, Detective Pewtress testified as discussed below about his familiarity with Defendant's residence and his yearslong investigation of Defendant.

Detective Pewtress first testified that on February 3, 2020, Keiko Donnafield, Defendant's mother, called the Guam Police Department to report an Unauthorized Use of a Motor Vehicle. She provided the dispatcher with 10 Chalan Piao Tituka Street as her address, and the dispatcher relayed the address to Detective Pewtress. Detective Pewtress responded to the call and interviewed Keiko Donnafield, and he testified that she confirmed her address was 10 Chalan Piao Tituka Street, the same address he averred in the search warrant.

Detective Pewtress further testified about a police report dated February 20, 2022, seventeen days later, regarding a burglary of the Donnafield residence. The report listed 10 Chalan Pao Tituka Rd Ordot-Chalan Pago, GU, and the narrative listed 10 Chalan Piao Tituka, Ordot as the Donnafield address. Gov. Ex. 10-1, 10-4. Detective Pewtress testified that he reviewed the report before applying for the search warrant. Again, this address is identical to the

address he put in the search warrant.

Detective Pewtress also told the court that he performed an unconnected traffic stop on January 30, 2023. During the traffic stop, Detective Pewtress found methamphetamine, he questioned the occupant, and the occupant informed him that he had purchased the drugs while at Defendant's home in Ordot-Chalan Pago. The occupant accurately described the home, and he correctly identified the home on Google Maps. This description and identification matched the residence the detective applied for to be searched in the warrant.

Four months later, on April 13, 2023, Detective Pewtress testified that he investigated a robbery that occurred outside of the Donnafield residence. He spoke to the Defendant at his residence and Defendant confirmed his address as 10 Chalan Piao Tituka Street, the exact address listed in the search warrant. In his narrative report, Detective Pewtress described the residence as "a single-story concrete structure. It was white with a blue trim. There were numerous vehicles, apparently in poor condition, parked along the roadway next to the sidewalk. The residence was mostly fenced, but had a small driveway where the front door of the structure was, where I had spoken to" Defendant. Gov. Ex. 11-2.

On cross-examination, defense counsel questioned Detective Pewtress about his description of the residence. Although, he was presented pictures of other residences in the neighborhood that were white with blue tiles, Detective Pewtress correctly identified Defendant's home with its blue trim painted around the top edge of the structure. More importantly, Detective Pewtress also informed the court that he had been to Defendant's neighborhood "roughly twenty times."

On June 17, 2023, Detective Pewtress noticed an oddly parked car "next to [Defendant's] residence" during a "periodic check of Chalan Piao Tituka Street." Gov. Ex 7-3. According to his testimony at the suppression hearing, he investigated and found Paul Anthony Adams II

asleep in the car with methamphetamine. He questioned Paul Adams and found out that he had visited Defendant's residence earlier. Paul Adams then asked Detective Pewtress' permission to leave the car at the location next to the Defendant's residence to be looked after by the Defendant. The Defendant agreed to look after the car.

On November 7, 2023, a Guam Police Informant told Detective Pewtress that Defendant sold drugs from his residence. *Id.* Detective Pewtress averred in his search warrant affidavit that about a week later, on November 15, 2023, he "conducted a periodic check" of Defendant's residence and "noted numerous vehicles parked within the driveway and out along the curb of the residence." *Id.* at 7-4. Officers coordinated a controlled buy operation with the Guam Police Informant at Defendant's residence on November 28, 2023. *Id.* Detective Pewtress further averred that the Guam Police Informant stated during the debrief that Defendant packaged and weighed the methamphetamine before exchanging it for money through Defendant's bedroom window. *Id.*

Detective Pewtress averred in the affidavit and testified that he "contacted the Ordot-Chalan Pago Mayor's Office and spoke to Julie Posadas, who confirmed that the address for the Donnafield residence was #10 Chalan Piao Tituka Street in Ordot-Chalan Pago." *Id.* at 7-5. She stated Keiko Donnafield "was listed as head of household and [Defendant] was listed as a resident." *Id.* On the same day, November 30, 2023, Detective Pewtress applied to the Honorable Benjamin C. Sison Jr., Magistrate Judge of the Superior Court of Guam, for approval of the search warrant and Judge Sison signed it. Again, the Donnafield residential address as the detective knew it, was confirmed by Ms. Posadas.

On December 5, 2023, Detective Pewtress and a team of officers departed to 10 Chalan Piao Tituka Street, the address listed in the warrant. He testified that his convoy left the Central Precinct Command in Sinajana at 5:55 a.m., and upon arrival at the residence, the execution of

the warrant began after 6:00 a.m. The entry team breached the door and used a distraction device, or flash bang, before entering. They found Defendant's mother laying on the couch and informed her of the search warrant before escorting her out the residence. They proceeded to Defendant's bedroom where they found Defendant naked on his bed. Detective Pewtress testified that he spoke to Defendant at 6:08 a.m. and informed him of the search warrant. Defendant was then escorted out of the residence. Officer Calvo photographed the Defendant with the search warrant at 6:20 a.m., and Detective Pewtress transported Defendant to the Central Precinct at 6:36 a.m. At 6:55 a.m., Defendant was interviewed, and he gave 10 Chalan Piao Tituka Street as his address. Defendant was arrested at 7:25 a.m.

### B. Officer Calvo's testimony regarding the photographs

Officer Calvo testified at the evidentiary hearing about the photographs he captured on the day of the search. He testified that he took 178 photographs in this case and that he did not delete, edit, or alter any of them. He further testified that he photographed the exterior of the residence before he began photographing the interior. He stated that the metadata established that the first photograph was taken at 6:11 a.m. and the next photograph at 6:12 a.m. At 6:14 a.m., Officer Calvo photographed a silver Nissan Rogue wagon with the license plate OR4846, as identified in the search warrant, parked in the carport. He testified that the metadata confirms that he captured the photograph of Defendant sitting in a wheelchair at 6:20 a.m., immediately prior to taking his first picture of the interior of the residence. At 6:49 a.m., Officer Calvo photographed a safe with cash, bags, a key, and a gun inside Defendant's bedroom. He also took a photograph of a trash collection bill found in Defendant's trash which was addressed to Chalan Piao Tituka, 00010, Ordot GU, 96921. Officer Calvo conceded during cross-examination that metadata on photographs can be altered.

### C. <u>Defendant's testimony about the residential address and timing of the execution of the search warrant.</u>

Defendant testified, both about the address listed in the search warrant and the timeline of the search. He stated that the address listed was wrong and that the correct address was actually 152 B Chalan Diad Tituka Street, Ordot-Chalan Pago, Guam.[1] Defendant testified that he had no knowledge of this address at the time of the search warrant and at the time of his arrest, but learned for the very first time that this was his official address in February of 2024, when he talked to a postman about getting mail delivered directly to the residence for his mother.[2]

Separately, the Defendant stated the search could not have plausibly started after 6:00 a.m. He noted that he was awake at 5:45 a.m. because his cellulitis caused him great pain.[3] He testified that he heard officers enter the home "yelling, cursing at [his] mother" at 5:47 a.m. and they entered his bedroom "a few minutes later."[4] He asked the officers to check on his mother who could not walk. Two female officers assisted his mother, and they informed him that his mother was fine. It took him "about five minutes" to dress himself due to his illness. It took him "about another seven minutes" to walk out of the residence because his leg was "pussing" and he had to lean against the wall to walk. Then, it took "about five minutes" for the officers to bring him the wheelchair. The Defendant does not dispute the photograph of him in the wheelchair was taken at 6:20 a.m. In his motion, the Defendant argues the officers must have begun their search prior to 6:00 a.m. He asserts that his version of this timeline should be believed. To complete the

---

[1] Detective Pewtress returned to the Chalan Ordot-Chalan Pago Mayor's Office to confirm the address. On August 13, 2025, he reviewed the Survey Form at the Mayor's Office, and it listed the same address used in the search warrant: 10 Chalan Piao Tituka in Ordot. The form was "signed by Mayor Wayne S.N. Santos as true and correct." A new digital map, however, listed Defendant's residence as 152 B Chalan Piao Tituka.

[2] The search warrant was executed on December 5, 2023, two months prior to speaking to the postman.

[3] Defendant testified that he checked his camera monitor at this time because he was restless and heard noise.

[4] Defendant answered on cross-examination that "those times were just estimates" when referring to the times in his declaration. He stated that the times he provided in his testimony were estimates "by about two or three minutes."

search of him, the residence and the curtilage before 6:00 a.m., and then transport him to the Sinajana precinct, where he was arrested by 7:25 a.m., is more plausible with his timeline.

III. **LEGAL ANALYSIS**

On a motion to suppress, the controlling burden of proof imposes no greater burden than proof by a preponderance of the evidence. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974). The prosecution, as the proponent of the evidence, must bear the burden of proving its admissibility. *Katz v. United States*, 389 U.S. 347 (1967).

**A. Particularity Requirement**

The Fourth Amendment of the Constitution states that "no Warrants shall issue, but upon probable cause, . . . and particularly describing the place to be searched." U.S. Const. amend. IV. "The test for determining the validity of a warrant is whether the warrant describes the place to be searched with 'sufficient particularity to enable law enforcement officers to locate and identify the premises with reasonable effort,' and whether any reasonable probability exists that the officers may mistakenly search another premises." *United States v. Mann*, 389 F.3d 869, 876 (9th Cir. 2004) (quoting *United States v. Turner*, 770 F.2d 1508, 1510 (9th Cir. 1985)).

When evaluating affidavits for search warrants, the "*practical accuracy* rather than the *technical precision* governs in determining whether a search warrant adequately describes the premises to be searched." *Mann*, 389 F.3d at 876 (quoting *United States v. Williams*, 687 F.2d 290, 292 (9th Cir. 1982) (emphasis added). A search warrant can be "technically deficient, but … not every defect in a search warrant compels suppression of evidence seized pursuant to the warrant." *Turner*, 770 F.2d at 1510; *see also People v. Amador*, 9 P.3d 993, 997 (Cal. 2000) ("Complete precision in describing the place to be searched is not required.").

In *Turner*, the affidavit for the search warrant, and the search warrant, listed "2762 Mountain View, Escondido, California" as the address to be searched. *Turner*, 770 F.2d at 1509.

The correct address was actually "2800 Mountain View Drive" and "Number 2762 Mountain View Drive was located approximately two-tenths of a mile away." *Id.* at 1510. Still, the Ninth Circuit found the "warrant description was sufficiently particular" even when the listed address was technically incorrect because the "address in the warrant was reasonable for the location intended; the house had been under surveillance before the warrant was sought; the warrant was executed by an officer who had participated in applying for the warrant and who personally knew which premises were intended to be searched; and the premises that were intended to be searched were those actually searched." *Id.* at 1511.

      Likewise, in *Mann*, the Ninth Circuit held that "[d]espite the technically misstated address, two of the agents executing the warrant personally knew which premises were intended to be searched . . . and the warrant's misstated address [was] immaterial to identifying the premises." *Mann*, 389 F.3d at 877. In that case, the search warranted described the location to be searched as the "campground up Cherry Creek Road on the West Fork of the Lower Deer Creek, T2S, R14E, NW 1/4 of Section 21, Sweet Grass County, Montana, occupied by James Francis Pollender." *Id.* at 873. The court ultimately determined that the "warrant's mistaken reference to the Lower Deer Creek, rather than the Upper Deer Creek, could not have caused any confusion in this case." *Id.* at 877 (highlighting the agents' personal knowledge of the premises to be searched).

      Here, Detective Pewtress, like the executing officer in *Turner*, personally surveilled the residence, applied for the warrant, and executed the search. Moreover, even though the address was technically incorrect, the address was reasonable for the location and the record evidenced that the correct residence was searched. *See Mann*, 389 F.3d at 877. Both Defendant and his mother had used the same address from the search warrant in their past interactions with the police. Detective Pewtress verified the address with the Ordot-Chalan Pago Mayor's office

before he applied for the search warrant. Defendant testified that he only learned of the correct address in February of 2024, after the search warrant was executed on December 5, 2023. The technically incorrect address does not defeat the search warrant because Detective Pewtress had personal knowledge of the premises from his extensive surveillance of it and he participated in both applying for and executing the search warrant. Accordingly, while the address was technically incorrect, the practical accuracy overrides. The technical deficiency does not warrant the suppression of evidence obtained from the search on December 5, 2023.

As the court finds the search warrant was sufficiently particular for the Fourth Amendment, the court need not address the Defendant's argument as to whether the good faith exception to the exclusionary rule applies under *United States v. Leon*, 468 U.S. 897 (1984).

**B. Timing of the Search**

Local Guam law requires warrants to "be executed in the daytime" between "the hours from 6:00 a.m. to 10:00 p.m." 8 GCA § 35.20(c). After listening to the testimony from both parties, reviewing the presented exhibits, and hearing counsels' arguments, the court determines that the United States' witnesses were more credible. *See U.S. v. Nelson*, 137 F.3d 1094, 1110 (9th Cir. 1998) (giving "special deference to the district court's credibility determinations" in its decision to deny a motion to suppress). Detective Pewtress testified that the search team left the Central Precinct Command in Sinajana at 5:55 a.m., and executed the search after 6:00 a.m. He further testified that he did not speak to Defendant until 6:08 a.m. Officer Calvo supported Detective Pewtress' testimony by testifying that the first photograph of the home was not taken until 6:11 a.m. and that the first photograph of the interior of the home did not occur until 6:20 a.m. according to the metadata from the photographs he took during the search.[5] The Defendant

---

[5] Officer Calvo admitted the metadata on the photographs could be manipulated, but the court finds credible his testimony that he did not delete, edit, or alter the photographs.

gave a detailed account of his version of the search and arrest, but admitted during his testimony that the times provided in his declaration and testimony were estimates. The testimony from the officers and the metadata from the photographs more reliably establish that the search did not start until after 6:00 a.m. Accordingly, the search did not violate Guam law.

IV. **CONCLUSION**

Based on the discussion above, the court hereby **DENIES** Defendant's Motion to Suppress Evidence. The court finds that the prosecutor has met its burden of proving by a preponderance of the evidence that all of the evidence seized should not be suppressed.

**SO ORDERED.**



/s/ **Frances M. Tydingco-Gatewood**
    **Chief Judge**
**Dated: Nov 07, 2025**